IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-724-D

| | |
|---|---|
| ROBERT FRITZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DUKE ENERGY CAROLINAS, LLC, )<br>and HELVEY & ASSOCIATES INC., )<br>)<br>Defendants. ) | **ORDER** |

On September 12, 2013, Robert Fritz ("Fritz" or "plaintiff") filed a complaint in Wake County Superior Court against Duke Energy Carolinas, LLC ("Duke Energy") and Helvey & Associates Inc. ("Helvey") (collectively, "defendants") alleging violations of the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §§ 75–50 to 75-59, the North Carolina Collection Agency Act ("NCCAA"), N.C. Gen. Stat. §§ 58-70-1 to 58-70-155, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692–1692p. See [D.E. 1-1]. On October 15, 2013, Helvey removed the case to this court. See [D.E. 1]; 28 U.S.C. §§ 1331, 1441(a). On November 15, 2013, Duke Energy moved to dismiss Fritz's complaint and filed a memorandum in support [D.E. 12, 13]. On December 27, 2013, Fritz responded in opposition [D.E. 15]. On January 10, 2014, Duke Energy replied [D.E. 16]. As explained below, the court grants Duke Energy's motion to dismiss.

I.

Fritz's complaint alleges the following facts. Fritz has been a customer of Duke Energy for approximately twenty-five years. Compl. [D.E. 1-1] ¶ 5. In January 2013, Fritz informed Duke Energy that he planned to close one of two accounts he had at the time ("Account 1") due to a change

in residence. Id. ¶ 6. In February 2013, Fritz received his final bill for Account 1: $187.40 due on March 4, 2013. Id. ¶ 7. Fritz did not pay the bill on time. See id.

On March 11, 2013, Duke Energy retained defendant Helvey to collect the amount Fritz owed on Account 1. Id. ¶ 8. The next day, Fritz paid his final bill for Account 1 by check. Id. ¶ 7. On March 15, 2013, Duke Energy received and cashed Fritz's check. Id. ¶ 9. Instead of applying the payment to Account 1, Duke Energy erroneously applied it to Fritz's other account ("Account 2"). Id.

On March 18, 2013, Fritz received a letter from Helvey stating that he still owed Duke Energy $187.40. Id. ¶ 10. Fritz disregarded the letter because he knew, through his online banking services, that Duke Energy had cashed his check three days earlier. Id.

In April 2013, Fritz received a bill for Account 2. Id. ¶ 11. The bill indicated that Duke Energy had applied Fritz's payment on Account 1 to Account 2. Id. Upon reviewing the bill, Fritz contacted Duke Energy. Id. ¶ 12. Fritz alleges that although Duke Energy assured him that it would immediately rectify the situation, it failed to inform Helvey that Fritz had paid his final bill on Account 1. Id. Accordingly, Helvey did not cease its collection efforts.

On or about May 5, 2013, Helvey attempted to collect the amount Fritz purportedly owed on Account 1 by reporting to the three major credit reporting agencies that Fritz owed an outstanding debt. Id. ¶ 14. As a result, Fritz's credit score dropped from 769 to 692, a difference of 77 points. Id. On or about May 18, 2013, Fritz learned that Helvey had reported the purported debt to credit reporting agencies. See id. ¶ 15. Fritz contacted Helvey that day to notify it of Duke Energy's error, but the damage to his credit score had already been done. See id.

According to Fritz, the timing could not have been worse: Fritz was "diligently seeking out opportunities to purchase a home," and "[t]he large drop in his credit score . . . prevented [him] from

2

securing a ... mortgage ... at the reasonable and commensurate rate that his real score of 769 would have allowed." Id. ¶ 17. Fritz's credit score "has since been rectified," but he contends that because market interest rates have only continued to rise since the events at issue, he "has forever lost the opportunity of securing a mortgage at the favorable rate that he would have obtained." Id. ¶ 18.

On September 12, 2013, Fritz sued Duke Energy and Helvey. Fritz alleges that Duke Energy wrongfully attempted to collect debt by "falsely represent[ing] that payment was due" after Fritz had paid his final bill on Account 1 and by "failing to adequately report the status of the debt" to Helvey, in violation of N.C. Gen. Stat. § 75-54. Id. ¶ 23. Fritz also alleges that, as a result of Duke Energy's unlawful debt-collection tactics, he "sustained actual damages, including, but not limited to, a reduction in his credit score and inability to purchase a home with favorable interest rates." Id. ¶ 24. In response, Duke Energy moved to dismiss Fritz's complaint for failure to state a claim upon which relief can be granted. See [D.E. 12]; Fed. R. Civ. P. 12(b)(6).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79.

Duke Energy contends that 15 U.S.C. § 1681t(b)(1)(F) preempts Fritz's NCDCA claim. See Mem. Supp. Mot. Dismiss [D.E. 13] 4–6.[1] Section 1681t(b)(1)(F) provides, with some exceptions not applicable here, that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . [15 U.S.C. § 1681s-2], relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2, in turn, describes the responsibilities of those who report credit information to consumer reporting agencies ("CRAs"). Specifically, subsection 1681s-2(a) obligates furnishers of information to provide CRAs with accurate information and to correct any errors in reporting. Subsection 1681s-2(b) obligates a furnisher of information who receives notice of a consumer's dispute to investigate the disputed information and to promptly take action to correct any inaccuracy. See id. § 1681s-2(a)–(b); see also Ross v. FDIC, 625 F.3d 808, 813 (4th Cir. 2010).

Duke Energy's argument fails. Section 1681t(b)(1)(F) preempts causes of action against furnishers of credit information under state laws that overtly regulate credit reporting. It also preempts causes of action against furnishers of credit information under state laws that do not overtly regulate credit reporting—such as debt collection acts—if those laws have the effect of regulating credit reporting in certain circumstances. See, e.g., Ross, 625 F.3d at 813–17; Glenn v. FNF Servicing, Inc., No. 5:12-CV-703-D, 2013 WL 4095524, at *3 (E.D.N.C. Aug. 13, 2013) (unpublished); Edwards v. Santander Consumer USA, Inc., No. 5:10-CV-424-D, 2011 WL 2457498, at *3 (E.D.N.C. June 15, 2011) (unpublished); Misel v. Green Tree Servicing, LLC, 782

---

[1] Generally, the existence of an affirmative defense such as preemption will not support a motion to dismiss under Rule 12(b)(6). However, the court may dismiss a complaint under Rule 12(b)(6) where "all facts necessary to the affirmative defense [of preemption] clearly appear on the face of the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (alteration, emphasis, and quotation omitted); see Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984); Edwards v. Santander Consumer USA, Inc., No. 5:10-CV-424-D, 2011 WL 2457498, at *3–4 (E.D.N.C. June 15, 2011) (unpublished).

4

F. Supp. 2d 171, 175–76 (E.D.N.C. 2011); see also Menashi v. Am. Home Mortg. Servicing, Inc., No. 8:11-cv-1346-T-23EAJ, 2011 WL 4599816, at *2 (M.D. Fla. Oct. 4, 2011) (unpublished) (collecting cases). Section 1681t(b)(1)(F) does not, however, preempt a state cause of action solely because it involves allegations about inaccurate credit reporting. See, e.g., Ross, 625 F.3d at 812–17 Rex v. Chase Home Fin. LLC, 905 F. Supp. 2d 1111, 1148–1154 (C.D. Cal. 2012). Preemption under section 1681t(b)(1)(F) is not "a highly[]contagious and fatal disease" such that "a few stray allegations about inaccurate credit reporting . . . contaminate[] . . . claims." Rex, 905 F. Supp. 2d at 1150.

Section 1681t(b)(1)(F) does not preempt Fritz's claim against Duke Energy. After all, Fritz alleges that Helvey furnished information to CRAs. He does not allege that Duke Energy did. Although Fritz alleges that he suffered damages stemming from inaccurate credit reporting, his claim against Duke Energy concerns its debt-collection tactics. Duke Energy's alleged conduct does not fall within the "subject matter regulated under . . . section 1681s-2." 15 U.S.C. § 1681t(b)(1)(F); see Ross, 625 F.3d at 817; Menashi, 2011 WL 4599816, at *3.

Ross bolsters the court's conclusion. In Ross, the plaintiff asserted two wrongs against one defendant: an unlawful tactic to collect a debt and a report of inaccurate credit information. See Ross, 625 F.3d at 817. The Fourth Circuit separated the two wrongs for preemption purposes. See id. Here, Fritz asserts two wrongs by two defendants: unlawful tactics to collect a debt by Duke Energy and a report of inaccurate credit information by Helvey. See Compl. ¶¶ 10, 13–14, 23, 29–30, 36. In Ross, the court separated for preemption purposes the two alleged wrongs by one defendant. Here, this court separates for preemption purposes the two alleged wrongs by two defendants.

5

Next, the court addresses Fritz's NCDCA claim against Duke Energy. To state a claim under the NCDCA, a plaintiff must plausibly allege, as a threshold matter, that "(1) the alleged obligation is a 'debt,' (2) the claimant owing the obligation is a 'consumer,' and (3) the party attempting to collect the obligation is a 'debt collector.'" DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 763 (M.D.N.C. 2003); Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000). Once the plaintiff satisfies these threshold requirements, he must plausibly allege the general elements of all unfair or deceptive trade practice claims in North Carolina: an unfair act, in or affecting commerce, proximately causing injury. See Ross, 625 F.3d at 817; Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000); Reid, 138 N.C. App. at 265–66, 531 S.E.2d at 234–35. An act "is unfair when it offends public policy and when the [act] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Branch Banking & Trust Co., 133 N.C. App. 580, 583, 515 S.E.2d 727, 729 (1999) (quotation omitted). In the context of debt collection, "unfair acts" include the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations, and unconscionable means. See N.C. Gen. Stat. §§ 75-51 to -55; Davis Lake Cmty. Ass'n, Inc., 138 N.C. App. at 296, 530 S.E.2d at 868.

Fritz alleges that Duke Energy committed an "unfair act" by using deceptive representations to attempt to collect a debt, in violation of N.C. Gen. Stat. § 75-54. See Compl. ¶¶ 19–24. To state a claim under section 75-54, a plaintiff need not cite a specific subsection of the statute, which provides eight nonexclusive examples of deceptive representations. See, e.g., Wilkes Nat'l Bank v. Halvorsen, 126 N.C. App. 179, 183, 484 S.E.2d 582, 584 (1997). Nor must a plaintiff allege "deliberate acts of deceit or bad faith." Forsyth Mem'l Hosp., Inc. v. Contreras, 107 N.C. App. 611, 614, 421 S.E.2d 167, 169–70 (1992). Nonetheless, a plaintiff must plausibly allege that "the act complained of possessed the tendency or capacity to mislead, or created the likelihood of deception."

6

Id., 421 S.E.2d at 170; see, e.g., In re McClendon, Bankr. No. 10-04226-8-RDD, 2012 WL 5387677, at *9 (Bankr. E.D.N.C. Nov. 2, 2012) (unpublished).

Fritz does not plausibly allege that Duke Energy violated N.C. Gen. Stat. § 75-54. Section 75-54 concerns communications between a debt collector and a debtor, not communications between a creditor and a debt collector. Thus, even if Duke Energy "fail[ed] to adequately report the status of the debt" to Helvey, such conduct falls outside section 75-54. Compl. ¶ 23; see N.C. Gen. Stat. § 75-54(1)–(8) (listing examples of deceptive representations made by debt collector to debtor to induce payment); cf. Johnson v. Brock & Scott, PLLC, No. 5:11-CV-474-F, 2013 WL 6058199, at *5 (E.D.N.C. Nov. 15, 2013) (unpublished) (concluding that communications between debt collector and debtor can violate 15 U.S.C. § 1692(e), an analogous provision under the Fair Debt Collection Practices Act, where the purpose of the communications is to induce payment by debtor). Moreover, none of Duke Energy's alleged communications with Fritz "possessed the tendency or capacity to mislead" him into paying a debt. Furthermore, Fritz does not allege that there was anything deceptive or misleading about the bill he received in February 2013. As for the bill he received in April 2013, Fritz understood it to show exactly what it said: that Duke Energy mistakenly credited his payment of $187.40 on Account 1 to Account 2, thereby reducing the amount he owed that month from $225.59 to $38.19. Reply [D.E. 16] 6; see, e.g., Wilkes Nat'l Bank, 126 N.C. App. at 183–84, 484 S.E.2d at 584–85.[2] Because Fritz does not plausibly allege that Duke Energy used deceptive representations to attempt to collect a debt, he fails to state a claim against Duke Energy under the NCDCA.

---

[2] The court may consider Fritz's April 2013 bill without converting Duke Energy's motion to dismiss into a motion for summary judgment. See, e.g., Suntrust Mortg., Inc. v. Busby, 651 F. Supp. 2d 472, 479–80 (W.D.N.C. 2009).

7

Alternatively, even if Duke Energy's failure to inform Helvey of its mistake constitutes an "unfair act" under the NCDCA, Fritz does not plausibly allege that such conduct proximately caused the injury of which he complains. Fritz contends that he "has forever lost the opportunity of securing a mortgage at the favorable rate that he would have obtained" if Duke Energy had informed Helvey of its mistake, if Helvey had not reported that Fritz owed an outstanding debt, if Fritz's credit score had not dropped, and if Fritz had purchased a home before interest rates rose too sharply. Compl. ¶ 18; see id. ¶¶ 12, 14, 17. Fritz does not allege sufficient facts to nudge this attenuated, multi-step causal theory across the line from possible to plausible. See Iqbal, 556 U.S. at 677–78; Adams v. Mills, 312 N.C. 181, 192–93, 322 S.E.2d 164, 172 (1984) (defining proximate cause as "a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result or consequence of a generally injurious nature, was probable under all the facts as they existed") (quotation omitted); see also Ross, 625 F.3d at 817. Accordingly, Fritz fails to state a claim against Duke Energy under the NCDCA.

II.

In sum, the court GRANTS Duke Energy's motion to dismiss [D.E. 12]. Duke Energy is DISMISSED as a defendant.

SO ORDERED. This **24** day of July 2014.

JAMES C. DEVER III
Chief United States District Judge